Case number 16-5315. Hall and Associates Appellant v. Environmental Protection Agency. Mr. Hall for the appellant, Mr. Fenton-Roth for the affilade. May it please the court, good morning. My name is John Hall. I'm counsel for Hall and Associates in this matter. We'd like to reserve two minutes of rebuttal. This is not your typical FOIA case. EPA's post-summary judgment document release and filings confirmed that the agency's legal and factual averments accepted by the district court at summary judgment were either baseless or significant issues of material fact existed that should have precluded a grant of summary judgment. And I can give you the specifics of those regarding the various FOIAs that were submitted. Regarding the October 4th FOIA, which is what we called our broad all-inclusive FOIA request, it's now understood that a narrow reading of that request caused the release of only a single one page of internal agency records, not the non-existence of additional responsive records as the lower court had assumed. Is it accurate to say that your request in this case asked for all documents that proved or disproved a particular fact? Well, there was a group of requests. Is that an accurate paraphrase of what your request was? There were different groups. In a way, Your Honor, but there were different groups of FOIA requests. And before the district court, you got to the point where you said what we really want is any documents that were responsive to our letter of a particular date. With regard to the October 4th requests, we said the agency concluded that science misconduct had not occurred, and there was a very, very detailed submission given in on the science misconduct issues. What the agency is concerned about is that you're requesting, not based on a description of the documents originally, but on something that would have required analysis by their staff. Well, Your Honor, that was an analysis that the agency had already conducted. The agency had already concluded science misconduct. So you're admitting that it would have required an analysis as they asked for it, as they said? Well, we were asking... And you told the court you'd be satisfied if you got documents that were responsive or were generated because of a particular letter. Is that correct? Well, Your Honor, we certainly were looking for the documents that the agency used to conclude that science misconduct had not occurred. Well, why didn't you just ask for that and make this atypical for your case instead of... You've already said this is not atypical for your case. It's not. Because usually there's a description that can be followed by the FOIA personnel at an agency, and they can find what you're asking for. Why didn't you just ask for that at the beginning? Well, Your Honor, we did provide a detailed description of the documents we were looking for. There were numerous points, technical points, within the record that was submitted. And we were simply asking for, did you analyze this point? If there was a record that analyzed that, and then please give us that record. If there was never an analysis... Lack of fed of interrogatory. Lack of fed of interrogatory. Well, Your Honor, the FOIA requests often ask for documents that the agency is using to indicate one thing or another. We know what FOIA requests usually look like because we see an awful lot of them. And usually there are descriptions that the FOIA personnel at the agency can handle without bringing the lawyers or the tech personnel in to analyze what the document proves or disproves. Well, Your Honor, we were very clear on our submission that we were not asking for the creation of any new documents. We were not asking for the creation of any new analyses. We just wanted the analyses they had already done. Well, that's not, I mean, your December 22nd requests don't say provide us with all records you look at, even if we accept your statement as a correct approach. You say provide us with all records or factual analysis that shows the statement is incorrect. Would that not sweep in any document anywhere on the agency, even if it was unrelated to this particular letter exchange, that would bear on the correctness or not? Well, Your Honor, we made it very clear when the agency, the initial FOIA request goes in, and the agency... I'm just asking you what that FOIA request means. I don't think you made it very clear. If you made it very clear, it's very sweet. Well, I think we made it quite clear to the agency that we were not asking them to create any documents. I'm not saying create. I'm saying this is a, EPA is a good-sized agency, and they have lots of records on lots of things. And you didn't confine your December 22nd request to even this exchange about the scientific misconduct letter. You said anything that shows this representation to be false. Well, Your Honor, no. The lead-in on the FOIAs all referenced the science misconduct submission. They specifically attached a piece of the submission that had gone in and said, the agency has concluded that science misconduct did not occur, and we wanted the documents that addressed, if they had them, that addressed the particular issue. No, the way you would phrase that is give us all documents you considered in issuing your responsive letter. Well, yes. Well, go ahead and do that. When an agency completes an analysis of a submission, they look at documents and information and reach a conclusion whether or not. So why don't you just ask for all documents that were involved in preparation of your response to our letter? In the October 4th request, that's precisely what we did. No, you said all documents relied on in that request. Relying on is not the same thing as all documents before you. Well, Your Honor, the relied on language was just precatory language that we used to say, what did you rely on in order to reach this conclusion? What was confusing to the client in the Great Bay Municipal Coalition was we got a two-page response to a very detailed submission that simply said science misconduct did not occur. So the question was, all right, what was the basis for that conclusion, given the very detailed submission that went in? And the fact of the matter is the only thing we got back on October 4th response, even though we listed categories of email, what emails, email exchanges, did you do any drafts, did you do any analysis of individual issues? We asked for all of those things, and we got a single one-page internal document. Then you get the documents, and then I'm trying to figure out the stipulation. Why the stipulation? The stipulation at that point, Your Honor, the judge had already ruled that EPA's October 4th response was sufficient with the one page. The judge had said the October 22nd responses were improper because they didn't like the way they were worded, not because of the email. Then she rewards them, and then they produce a bunch of documents, and then you stipulate. And then that produces a stack, right. That produces the stack of documents that, in fact, EPA had originally collected when the FOIA requests went in. In other words, there was no point. As of today, do you have everything you think you're entitled to? Well, quite frankly, Your Honor, we don't know. The response, when we stipulated that there was nothing further, it was to the FOIA, the reworded FOIA, which EPA's own filing made very clear was not the same as the October 4th request or the October 22nd request. They said it's completely different. But what's the point, other than for fees, which might be what's the issue here? The point other than. Once it gets reworded, let me finish. October 4th request, October 22nd request, there's confusion whether it's understandable or not. The district court plows through it all, reformulates the request, and that generates a lot of documents. You get the documents. Why aren't we, at least on the FOIA side of the case, as opposed to the fees side of the case, over? Because, number one, we never got a response to the October 22nd FOIAs, ever. The court ruled that there was. So you're arguing, as you stand here today, that the reformulation of the October 22nd request did not produce documents that you should have gotten under the original October 22nd request? Or a response that a document did not exist with regard to a particular issue, which, by the way, as the court might understand, is a valuable response. Whether or not. But she said the district court concluded that those were not properly formulated. Right. The court. And that was one of the main legal mistakes of the underlying decision you're on. It's the linchpin test that applies to decide whether or not a request is valid, as in the Ninth Circuit dealt with this recently in Yagman. Whether or not you word something as a question, which sometimes it comes out that way, or you word it kind of complexly because it was a complex issue you were asking about, that's not the issue. It's whether or not the people who got the request understood what you were looking for. And the records. The wording of the question or wording of the submission as a question, as an interrogatory, is that really consistent with the FOIA? Well, it's. The FOIA deals with asking for data, asking for documents, asking for evidence. It does not deal with asking questions and getting, requiring an answer. Well, Your Honor, we didn't ask them to produce the response to a question. You had to phrase things a certain way given their prior action. Their prior action was something did not occur. So we said give us the documents that showed X did not occur. If they would have said something did occur, we would have phrased it that way. It was a function of the underlying decision. And the fact of the matter is it is very clear in the record that the FOIA custodians. I mean, here's the quote. As you see, these requests focus specifically on certain assertions in EPA correspondence or other documents related to Great Bay. He handed it out, and he actually got a set of responsive documents. It wasn't. So they actually had the documents. They understood what we were looking for. Well, to be clear, I think the affidavit says potentially responsive. And then when they were trying to figure out what was responsive, and obviously to think about exemptions, is when they, at least from their perspective, got tied up in knots by the nature of your question, which seemed to be asking them to make a value judgment about the proof value according to each particular document. Well, I might observe, Your Honor, that EPA Region 1, who got the same, we have submitted FOIA requests like this numerous times to the agency in the past. On this same case, we sent virtually the same. They weren't exempt. Are any of those prior requests before us in this case? Oh, most certainly, Your Honor. They're in the record. Yeah. As a matter of fact, the district court itself noted EPA was previously able to respond to these kind of requests. And, in fact, Region 1, who got similar requests, was able to respond as soon as we clarified. We're not asking for anybody to generate any new records, answer any new questions. We just want to know. You just went through a science misconduct analysis. Can I ask a question about something the district court said and then get your reaction to? So the district court said in its September 27, 2016, ruling, Hall neither seeks a single additional document nor for the EPA to perform a single additional search. Instead, the sole result that Hall seeks from the court's revision of its entire summary judgment decision would be an increase in the attorney's fees that Hall contemporaneously applied for. Your reaction to that? Just simply not true, Your Honor. The fact that the court ruled just because of the way you formed a request, not whether the person understood it, means the agency can just go, I don't like the way it's worded. That was a key issue. We were asking for the summary judgment decision in our Rule 54B motion to be overturned given the prior — given the documents that we now knew. I have to say that in particular with regard to the October 4th FOIA, it was extremely frustrating. We've been practicing for 35 years on Clean Water Act issues, that the agency would have one page. I know, but then you got it. I mean, why does it matter now? Well, that — right. But the agency narrowly construed and said — I understand, but you got it eventually. Well, with regard to October 4th, I assume — I assume at this point there's probably no other records. That's what I assume. Right. Now, with regard to October 22nd, true. And with regard to the court's ruling on October — on the validity of EPA's October 4th response, also incorrect. EPA actually had collected all these records. Right. And, you know, Your Honor, your point made about exemptions, they collect what they believe to be responsive records. And then rather than tell you that they're doing an exemption of some sort or that they collected records, they just decide, I'll read the FOIA to say that none of those should be disclosed. That's not proper under any number of — I'm sorry, Your Honor. Following up on Judge Kavanaugh's question, what is it you're really asking of us today? Your final sentence in your prayer for relief asks about the attorney fees. The lead-ins to it, I'm not sure what it is you're asking for in that concluding paragraph in your brief. Well, Your Honor, we clearly — We'd like to look there and see what it is counsel's asking for. We clearly want the summary judgment ruling overturned. And then what happens after it's overturned? Well, what would happen at that point with regard — because the agency staff understood what we were looking for, it would go back to the — Can you give me a short answer to what it is you would get after the summary judgment? After summary judgment, it would be the October 22nd responses were valid FOIA requests, and the agency is required to answer them as worded. On what basis do you have for believing that there's any gap between what you would have gotten with your formulated October 22nd requests and the reformulated October 22nd requests done by the district court? Oh, I think the answer to the vast majority of the October 22nd requests is we have no documents. There are no responses. In other words — Well, how do you — I mean, it was done as a more global request, and she rejected your claim to say, you know, which documents go with which question. And so — and you got 50-something documents. And you have a basis, you say, for believing that that was not an adequate response, that they're holding something back? Well, Your Honor, a response that I have don't have documents addressing an issue is not the same as handing me a set of documents saying, here's the response. It's important for the clients to know which — So then is your objection to the reformulation of the request, or do you accept the reformulation of the request, and you're challenging that part of the district court's decision that said they don't have to say this document goes with this question and this one goes with that question? We certainly don't agree that the district court should have reformulated our request, and especially in light of the ability of the agency staff to have understood exactly what we submitted. Okay. So if your objection is to reformulation, not to her refusal to have them designate which documents went with which of your original questions. So we put that aside. And so it's really just the reformulation. Then why — again, how do we know that you would have gotten — at that point, then you have to have some basis for believing that there were more documents you would get if you hadn't reformulated your request. Well, I guess we'll find out when the agency is actually required to respond to the request as it was submitted. Again, October 4th, I presume the pile of documents is really the complete record of what they had, which is what we were trying to get, and actually would have completely obviated any — even raising the October 4th issue. I mean, had we gotten that, we would have said, fine, I guess that's their full set of information, but that's not what we got. And October 22nd, they just refused to respond as submitted. Okay. Why don't we hear from the government, and then we'll give you some time in rebuttal. Thank you. Thank you. Thank you. May it please the Court, Peter Fafneroth for the EPA. This case is really about an attempt to weaponize FOIA, as Judge Sintel recognized. You cannot make contention interrogatories and pretend that they are a FOIA request. EPA did, in fact, in good faith, respond once, finally, after much prodding by the district court and their agreement on the record to the reformulation of the request. Why does it matter how it's formulated as long as the request is understood and can be responded to? I understand there could be arguments about that here, given the judgment about disproving something that was asked, but I don't know why if someone had a perfectly clear FOIA request and they just happened to, like some Jeopardy question, put a question mark at the end of it, it wouldn't be a problem. Right. The issue here is not about whether it was formulated as a question. Frankly, their citation to the Ninth Circuit is a decision. Or as an interrogatory. I'm sorry? Or as an interrogatory. As long as it's clear what they want. Right. Okay. Well, you're starting out with it was all about their formulation, and that was sort of how EPA initially seemed to respond. That's my concern. My apologies. It's about whether it was vague. It's about whether it was sufficiently clear. And the law is clear that the agencies, upon receiving a FOIA request, are not required to go out and create records. They're not required to go out and do analysis. They have to be able to understand the request, and if it's vague, as it was in Yagman, a case which obviously is not binding on this Court, but which I think a fair reading of actually supports how EPA proceeded in this case. Yes? I'm trying to figure out why we're here. I agree.  Because they do the request, the multiple requests, and you say they're confusing. They say they're not confusing. But in any event, the documents eventually get produced because the district court manages the case through. So why aren't they eligible for fees? Frankly, because they submitted a request, two requests, that eventually produce some documents, and isn't that enough to at least make them eligible as opposed to entitled? Right. First of all, there's been, as you note, no entitlement analysis here. I understand that, but there could be a remand for entitlement analysis. But the eligibility analysis, you make the FOIA request, as is often the case. There's a lot of back and forth in the district court, a little different in this case. And then documents end up getting produced. That usually clears eligibility. It often does, but not always, as Weisberg, which is cited extensively in our papers, makes clear. There is really quite a bit of analysis of the back and forth, and it is the district court, which, as the Supreme Court has recognized, is much, much closer to these issues. That's particularly true on the entitlement prong, but eligibility, not so much. At the same time, the district court saw the, frankly, intransigence of the other side in agreeing to phrase the request in a way that was a typical FOIA request. What records concern? What records did the agency generate in looking at this issue, as opposed to, is this true or not? And that's because, I mean, if you look, for instance, at Joint Appendix 208, that is an email from a plaintiff's counsel expressly refusing to reformulate the request in a way that would allow. Well, why wouldn't that all go to entitlement? They go, look, some of this litigation was their fault, but some of it was EPA's fault because it didn't follow its own regulations on how it responds to confusing requests where it's supposed to affirmatively, proactively reach out and work with the claimant. So, you know, both of you had something to contribute. That sounds to me like an entitlement analysis. So they were eligible, but we're not going to give them all. We give them a little bit here, take some off here. Isn't that what the district court was doing? Was she sort of collapsing the eligible and entitlement prongs? I don't think so, Your Honor. First of all, I will quibble with the district court's statement that EPA did not engage appropriately in an attempt to work with the other side to reformulate even before litigation. You'll see in the record there are multiple requests to go back and forth and say, you know, can you please clarify? For instance, also, I want to point out. You have not challenged any aspect of the district court's summary judgment statement. We have not. We have not. So I'm taking her at her word that EPA did not follow its procedures. I understand. And they made mistakes in the summary judgment stage. So if we take that as a given, then I'm back to my original question, which was to get back to the fees question, and that is when you start saying, well, they caused some of the extra litigation. EPA caused some extra litigation. That sounds to me like what you do at entitlement, not eligibility stage. Certainly one could look at those same issues at the entitlement stage. I don't disagree with that. I do want to also take issue with something that my counterpart said about the Region 1 request was able to be responded to. And as we've emphasized in our brief and as the record likewise makes clear, Region 1 in Boston only responded after they did, in fact, clarify their request in order to make it sound like a normal request. Did they? I might be going back to the prior issue, but didn't they substantially prevail? They did not, no, not based upon the way that the district court has decided these issues. They filed the FOIA litigation. They try to get some documents before they file the suit. They don't. They file the FOIA litigation. They get the documents. Right. But if they would have gotten the documents anyway under Weisberg, they have not substantially prevailed. Why do you say they would have gotten the documents anyway? That's the part I want to make sure I get. Because there was part of an interactive process that was ongoing and that would have continued notwithstanding the litigation. So you're saying that if they had filed the modification that the court eventually imposed, they would have gotten the documents without litigation. Exactly. Okay. That's what I wanted to make sure I understood. Okay. So if they continued through the administrative process, I think I'm saying what Judge Sentell just said, but I'm thinking through this. If they continued through the administrative process and had formulated a request in the way the district court ultimately did, they would have gotten the documents. Therefore, they didn't need the litigation. Therefore, they didn't substantially prevail. Exactly. And the Region 1 experience is illustrative of how that can happen, right? You know, eventually they wrote a letter saying, yes, what we really meant was the documents that were looked at in responding to this. And they got those records through the administrative process. Did Region 1 have these same types of what you call interrogatory requests? Here's this scientific fact thing. Show me what's incorrect. Did they get that? I haven't seen all. I believe there were 20-some requests to Region 1, but I believe that they were similar. Give me the documents that show this is incorrect. Again, I haven't seen all of them, but I believe that is the case. They're not actually in the record in this case. But what is in the record in this case is – Because I saw it going to them look more like the October 4 request. No, I don't think so. I mean, I believe, frankly, just by logic, if there were 20-some requests, they were for details. Okay. Well, what about the argument, then, with respect to summary judgment, that if they – the thing that they came back to clarify was say, we're not asking you to create any documents. And your argument here has never been that they were asking us to create documents and say you were to make judgments. So I'm not quite sure how your argument that Region 1's response is helpful to you. Because all they did was say, we don't want you to create documents. But you weren't under the illusion that they wanted you to create documents, were you? No, no, the reformulation that mattered in Region 1 was not whether or not we were creating documents, but rather not. They were simply asking for records that pertain to a general subject. And that is different than asking, give us documents that either prove or disprove X. Well, then why wouldn't all these 50 documents – because that sounds like their October 4 request, right? Give us everything you relied on in making this decision. So why didn't all these 50 documents come out in response to the October 4 request? Because they asked specifically what was relied upon for the decision. And they got what was relied upon for the decision based upon the search that was reasonably undertaken in response to that request. These are sophisticated plaintiffs. And under Kowalsik, this Court says agencies should not give records that requesters don't want, and that agencies are reasonably entitled to assume that the requester didn't ask for them because they either already have them or they're not interested. And so when a sophisticated plaintiff, like Hall and Associates, asks what was relied upon, they get what actually was relied upon in rendering the decision. Not everything – if they had asked, give us everything that was considered in response to the scientific misconduct allegations, they would have gotten a different production, one that looked – that was probably exactly the same as what they got in response to the October 22 court-reformulated request. And if – I do want to mention the argument that this is an untimely appeal. If the Court looks at Rule 58, Rule 58 is – We have your brief on that, so I don't think you need to elaborate. Okay. If the Court has nothing further, let me just – you know, also I just want to emphasize that the stipulation by Hall and Associates does mean something. That really did close the litigation, and that was an agreement. They reserved appeal rights as to the underlying district court decisions. If you look at what they say they're reserving appeal rights as to the – they say the district court's orders. But they agreed to the – I couldn't understand that stipulation given the reservation, but – Yeah. Okay. Thank you. And finally, one other point is just that in responding to a request, there are multiple phases that have to be undertaken by an agency. You know, simply going out and asking a bunch of potential custodians, do you have records on this, doesn't mean that the records that come back are responsive. That means they're potentially responsive. And that's – anyway, I would ask that the decision be affirmed. Thank you. Thank you. Can I start with a question on the fees point? The district court, page 10 of its opinion, says the following – just get your reaction. There's no basis for the court to conclude that Hall, before commencing this suit three years ago, could not simply have offered the same clarification it did to EPA Region 1 and thus obtained the requested documents without the involvement of this court. Your Honor, we completely disagree with that observation. We did, in fact, give the precise clarification to EPA Region 1 and headquarters. They both raised the same exact issue when they refused to respond to the detailed FOIAs. And a question was, are any of the Region 1 FOIAs in? Yes, Exhibit 26 is one of those. As soon as we told Region 1 we are not asking for any documents to be created, generated, nothing new, just what you did on those specific issues, Exhibit 30 responds from Region 1. We will process this request and give you the specific documents, quote, refuting the specific scientific allegations. So the exact clarification that we gave EPA Region 1, headquarters just said no. I'm not accepting that clarification, even though it was – the former FOIA request was identical for all practical purposes. And then headquarters, in their denial at the administrative level, switched the argument to not that you're making us create new documents, to I don't like the form of the request. That was the complete basis. They never said that. You say that repeated in your brief, that they said I don't like the form of the request. They never said that. Oh, in the administrative, in their final? They said what they thought was wrong with the request. But just to say I don't like it doesn't look like they did. Well, as a generic way of putting it, Your Honor, the way it was phrased.  Yeah, the way it was phrased. I would observe that the court itself – I read you saying that they said it many times in the brief, that they didn't say that. Well, Your Honor, we believe that the administrative record with regard to the – at the administrative level, when they rejected the same response that Region 1 had accepted, said we don't like the form of – the form in which you have posed an interrogatory-like question. It posed no problem to EPA Region 1. They didn't call it that. They immediately responded. And I might observe at that – I still don't see why we should assume they were correct. Well, at that point, since EPA had – Region 1 did one thing, and Central did another. And I don't see why we should assume Region 1 was correct. Well, Your Honor, EPA has the burden of demonstrating that they can't respond to a FOIA request. They – saying that it's interrogatory-like, so I'm not answering, when in the past the agency has responded to these type of requests. Region 1 was presently – the court itself, the district court itself noted it's – the exact quote, something like, it's perplexing or confusing that Region 1 could actually respond to these, and yet headquarters could not. Right. It's a little more than It could not depends on whether they had to, I suppose. I mean, those are two different things. And it depends, I suppose, on the form of the request. Well, Your Honor – So this fee – the sentence I read you about the fees may ultimately turn on whether headquarters was correct to say the form of the request is not proper. And, Your Honor, if – and the guiding principle on that is the lynchpin test that the district court itself pointed to. Did a knowledgeable employee who was processing, could they reasonably identify the records being sought within a reasonable amount of time? They, in fact, did that. That is precisely what the record that was released showed. So in terms of the burden, since the record custodians, there's no indication in any affidavit or any record – any documents in this record, none, that there was actual confusion over what was sought. Now, at the end of the process, when all the documents were collected, the attorneys jumped in and said, we don't like it as a question. We think you're making us make new documents. No one, when they were processing this request, raised that point. It took them, I want to say, three hours to collect all the documents. They didn't ask a single question. And as the – as the permit – as the FOIA officer himself said, these requests focused specifically on certain assertions in EPA correspondence and related documents. Nobody said, well, I'm confused. I can't do this. They got the documents. When you get the FOIA administrative determination that says that they're not properly formulated, and then they say, if you would like to clarify or modify these seven requests in a non-question form by providing specific information such as a subject matter, please resubmit. The subject – each of – Your Honor, each of these requests, if there was one fault, they were overly detailed. We took exact, specific issues. I mean, this isn't something where it was like a vague request of, you know, generally hand – you know, it wasn't a vague request for all records anywhere in the agency. It was a specific issue, specifically defined, which is what – Which could have done that, right? Well, we did do that. That's what the requests were. The Region I requests were identical. A very specific issue was phrased and said, where did you – what documents did you hand EPA headquarters to say that scientifically this did not occur? And the Region said, oh, we can answer that question. Sure. Here are the documents that address these issues. And, you know, quite frankly, had we not filed our FOIA appeal, there's no chance EPA would have given us any records. In fact, we never even knew that they used the relied upon language to limit – we had three categories. One said, and what did you rely on? The other one said, give us any documents on this, any documents you created on that. We didn't even know. Had they, at the administrative level, called us and said, you know, we're going to take your FOIA, we're reading it, and we think you only want specific things we relied upon and didn't do A, B, and C, we would have said, whoa, whoa, whoa, that's not correct. And that would have never been appealed. We didn't even find that out until we filed our Rule 54B motion. And then they said, oh, the reason this pile of documents was collected but you didn't get it is because you stuck the word relied on in there. And that's narrowly reading a FOIA. I mean, the Court can read this FOIA itself and ask yourself whether, when you look at those three categories, that's reasonable. I mean, if you conclude it's completely reasonable and no one else would read it any differently, fine, then we lose on that. But I don't think that that's an even close reading, and we certainly had no notice of it, which is why we ended up in court, and EPA could have told us earlier that they were doing that. Okay. Thank you very much. Thank you.
judges: Kavanaugh, Millett, Sentelle